DEXTER B. POTTER, Adm. *vs.* EDWIN B. HARVEY.

APRIL 10, 1912.

PRESENT: Dubois, C. J., Johnson, Parkhurst, and Sweetland, JJ.

*(1)   Executors and Administrators.   Splitting Claims.   Disallowance.*

Appellee, who had a continuous running account for services rendered by him as a physician to his sister, within the period of six months from the first publication of the notice of the appointment of her administrator, filed a claim against her estate, which was disallowed and suit was brought thereon and subsequently settled. Within the period of one year from said notice, appellee filed a second claim covering items for services, which, he alleged he forgot to include in the first claim, but recalling the omitted items and being advised that the claim was valid, he filed it at that time. It was not disallowed.

*Held*, that it was not a case of one who through accident or mistake, having severed his claim was attempting to reunite it, but of one, who, having discovered the mistake, ratified the severance by filing a separate claim, and insisted upon the validity of both claims.

*Held*, further, that while the statute C. P. A., § 883 (now Gen. Laws, 1909, cap. 314, § 3), gives a preference to claims filed within six months over those subsequently filed, no claimant has the right to sever claims otherwise indivisible for the purpose of making a part preferred over the other.

*Held*, further, that as claimant did not have two accounts against the estate he was not entitled to file two claims and there was no necessity for the disallowance of the second claim, and the administrator was not guilty of unfaithful administration for not paying the same.

*(2)   Severing Cause of Action.*

A demand indivisible in its nature, cannot be split so as to authorize several actions for the same claim, and if a recovery is had of a part of such a demand it will be regarded as an election to accept that part for the whole.

*(3)   Severing Cause of Action.*

In the absence of special circumstances, an open or continuous running account between the same parties, constitutes a single and entire demand which is not susceptible of division, the aggregate of all the items being regarded as the amount due and it cannot be severed for the purpose of bringing different suits on its different parts.

PROBATE APPEAL.   Heard on exceptions of appellant and sustained.

DUBOIS, C. J.   This is an appeal from the decree of the Municipal Court of the city of Providence, entered February 5th, 1909, adjudging the said Dexter B. Potter as administrator upon the estate of Abbie M. Harvey, deceased, to be guilty of unfaithful administration for neglecting and refusing to pay the claim of Edwin B. Harvey, M. D., "for professional services from Feb. 1, 1902, to March 17, 1906, $400.00," filed May 15, 1907.   Said appeal was duly entered and prosecuted in the Superior Court and the decree of the Municipal Court was therein affirmed, for the reasons appearing in the following rescript:   "Tanner, P. J.   This is an appeal from the action of the Municipal Court of Providence adjudging the appellant guilty of unfaithful administration in refusing to pay a claim allowed by operation of law against the estate of which the appellant is administrator.

"It appears that the appellee filed a claim against the estate within six months and brought suit thereon after disallowance by the administrator, and that he afterwards filed within the statutory period another claim against the estate which was not disallowed by the administrator within the statutory period given for that purpose.   The appellant appeals from the decision of the Municipal Court adjudging him guilty of unfaithful administration.

"The first reason of appeal is that the administrator disallowed the claim as by record therewith filed is shown.

"The meaning of this is that the administrator attempted to disallow the claim more than 30 days after the expiration of the time within which he might have disallowed the claim,

because of the provisions of Sec. 6 of Chap. 314 of the Gen. Laws of 1909, because of evidence discovered after the period within which he might have originally disallowed the claim. We think, however, this provision of the statute refers to evidence which the administrator could not with reasonable diligence have discovered within the time originally given for disallowance. The newly discovered evidence presented in this case is clearly evidence which the administrator could have discovered within the time originally given, and in all probability would have discovered had he been aware of the filing of the claim. The administrator, in fact, did not discover the filing of the claim because he did not examine the records of the Probate Court, and did not know of the filing of the claim until after the thirty days prescribed by law. The administrator alleges as an excuse that the appellee had filed a prior claim against the estate and brought suit thereon. The appellant also urges that the appellee by his conduct in filing the first claim, and saying nothing about the second claim, excused the administrator from looking for further claims. We find nothing, however, in the evidence which warrants that conclusion. The appellee did not know that the second claim was valid until so advised by counsel. We think, therefore, that the evidence urged as newly discovered was evidence which the administrator did not discover because he did not examine the records as he should have done to discover the filing of the claim. The case of *Raub* vs. *Nesbitt*, 111 Mich. 38, is urged upon our attention. The newly discovered evidence in that case, however, was evidence which the administrator was prevented from finding because of the attitude of the claimant in changing his claim at the time of the trial of the appeal. In the case at bar, however, the administrator was prevented from discovering the evidence because of his own neglect to examine the records. We think a claimant has a right to file amended or additional claims within the statutory period. In fact, that is his only recourse if he discovers that he has made a mistake or an omission. The

rule against splitting causes of action does not, we think, apply to the mere filing of different claims against an estate. It is true that in the case at bar the appellant might have defeated the second claim because of the action brought upon the first, which would estop the appellee from maintaining any further action on a claim which might have been included in the first suit, but this, as we have seen, the administrator might have done by a disallowance within the thirty days, and we cannot see how this amounts to newly discovered evidence within our construction of the statute. We think the appellant attempted to disallow the claim, not upon evidence discovered after the thirty days, but rather upon discovery of the existence and filing of the claim after the thirty days.

"The remaining reasons of appeal are to the effect that the appellee was estopped from filing the second claim, that the second claim was not such a claim as should have been allowed, and that the decree of unfaithful administration was erroneous.

"These reasons, we think, have been fully dealt with in our discussion of the first reason of appeal. We should be very glad to afford relief to the estate and administrator if we felt that we could do so within the law as we construe it.

"The decree of the Probate Court is affirmed."

The case comes before this court upon the appellant's bill of exceptions based upon the following grounds: That the decision of the Superior Court affirming said decree is against the law, and secondly, that the same is against the evidence and the weight thereof. It appears in evidence that the date of the first publication of notice of the appointment and qualification of the appellant as administrator of the estate of Abbie M. Harvey, deceased, was May 17, 1906. That on the fourteenth day of November, 1906, the appellee filed the following claim against said estate:

"PROVIDENCE, R. I., Nov. 14th, 1906.

"Estate of Abbie M. Harvey,
  "To E. B. Harvey, M. D., Dr.,

139 weeks board, from May 1st, 1899 to Jan. 1st,
    1902............................... $1,390 00
Professional services, from April 15th, 1900 to
    Jan. 1st, 1902......................... 1,610 00
                                      _____
                                        $3,000 00
" P. O. Address 18 Broad St., Providence, R. I.;"

that said claim was duly disallowed by said administrator
within thirty days after the expiration of six months from
said publication; that suit was brought thereon by said
appellee by writ dated June 6, 1907, and served June 7, 1907,
and the case was tried and a verdict rendered therein by a
jury; that the case was afterwards settled by the parties on
the first day of August, 1908, as appears by a receipt which
reads as follows: "Received from Dexter B. Potter, Admin-
istrator of the Estate of Abbie M. Harvey, $350 in full
settlement of suit, entitled Edwin B. Harvey vs. Dexter B.
Potter, Administrator of the Estate of Abbie M. Harvey,
now pending in the Superior Court in this state, numbered
23416, for board and professional services furnished said
Abbie M. Harvey, from May, 1899 to January 1, 1902;"
that on the fifteenth day of May, 1907, the appellee also filed
in the office of the clerk of the said Municipal Court the
following claim against the said estate:

"Providence, R. I., May 15, 1907.

    " Estate of Abbie M. Harvey,
        " To E. B. Harvey, M. D., Dr.,
            " 183 Broad Street, cor. Stewart.

For professional services, from Feb. 1, 1902 to
    March 17, 1906....................... $400 00."

No notice was given by the claimant of the filing of this claim and the appellant had no actual notice of its existence until the same was called to his attention by the appellee on or about the first of September, 1908, by a letter wherein he stated that he had filed his claim which had not been disallowed and requested that a check be sent to him for the amount; this was after the settlement of the suit hereinbefore referred to. On the eleventh day of said September, the appellant sent the following letter which was duly received by the appellee:

"PROVIDENCE, September 11, 1908.

"Edwin B. Harvey, M. D.,

"181 & 183 Broad Street.

"You are hereby notified that your claim for alleged professional services to your sister, Abbie M. Harvey, deceased, filed in the clerk's office of the Municipal Court against her estate on the 15th day of May, A. D. 1907, in the sum of $400, has been disallowed on the 10th day of September, A. D. 1908, for the following reasons: for newly discovered evidence after one year and thirty days from the time of the administrator's first publication of the notice of his appointment; because you had no right to divide your claim and file the same piecemeal, and that the claim as filed is too vague and uncertain to give the administrator any due notice or to constitute a valid filing of the claim.

"DEXTER B. POTTER,

"Administrator of the estate of Abbie M. Harvey."

The law governing the case at bar concerning the presentation of claims, suits thereon and disallowance of the same, respectively, is contained in C. P. A., Secs. 883, 886 and 891, whereof the portions material to this consideration read as follows: "Sec. 883. All persons having claims, including pending suits, preferred claims, and claims of the executor or administrator, against the estate of a deceased person shall file statements of their claims in the office of the clerk of the

probate court. Claims filed within six months from the said first publication shall be preferred in payment over all claims subsequently filed. Claims not filed within one year from said publication shall be barred," etc. "Sec. 886. Within thirty days after the expiration of six months from said first publication, and at any time thereafter before payment, upon evidence discovered after said period, the executor or administrator shall file in the office of the clerk of the probate court a statement disallowing such of the claims filed as he intends to contest, and shall give notice in writing, either personally or by registered mail, to claimants whose claims are disallowed. A like statement shall be filed, within thirty days after the expiration of one year, relative to claims presented after six months, and claims filed after one year may be disallowed within thirty days after notice of filing," etc. "Sec. 891. If the estate is solvent, and commissioners are not appointed, suit must be brought on a disallowed claim within six months after notice is given to the creditor that the same is disallowed; and unless otherwise authorized, suit on such claims shall not be brought thereafter against the executor or administrator."

The appellee's explanation of how he came to file his second claim is as follows: (p. 28) "Q. 11. Tell the court why you happened to file the second claim? Ans. Well; as I understood a doctor's claim or anybody's else claim, I suppose to be a preferred claim, should be presented within the first six months after the first notice of the administrator and I didn't put in a bill until a very few days, until within may be two or three days within the expiration of that period of six months, and then I put in a bill for board and professional services up to the time my sister left me. Q. 12. Up to the time she left you? Ans. Yes; up to the time she left my residence, and I hastily made out that bill and I forgot to include in it any item or bill for professional services from the time she left my home until the time she died, during which time I was her sole and only medical attendant,

.and as has been stated here she was feeble and needed a great deal of attention. It has been stated that I made two or three visits which is of course absurd. I was her only medical attendant. I had others in consultation at times. Dr. Shattuck on Broadway made other visits purely at my request. Doctor Miller saw my sister with me at my request. Dr. Kingman, who was an expert on nervous diseases, saw her twice I think, at my request and it is perfectly absurd to say that I never went there but two or three times. It is utterly false. Q. 13. How did you discover that you had a right to put in this second bill? Ans. You put me wise to that. You told me that I had not included the bill for professional services, from the time she lived with Mrs. Aldrich up to the time she died, and I thought I had lost my right because it was outlawed. I thought it had to come within the first six months and you told me it was within a year and you did not tell me that until very near the expiration of the year. I didn't bother my head about it. I thought that in not putting it in during the first six months it was outlawed. The first six months and the second six months, I believe there is a difference isn't there? Q. 14. Did you gather from information by counsel that the validity—did you gather that there was any difference as to the validity of your two claims, one being of stronger validity or of weaker validity than the other? Ans. That was the idea precisely, that the second bill was a valid claim. The first bill while she was under my roof at the time did not seem to me to be so valid. She was a member of my household. Q. 15. Did you at any time endeavor to deceive Mr. Potter and conceal from him this claim? Ans. No, I never did. I supposed the records of city hall could be referred to at any time. I didn't discuss that matter with him. I supposed it was up to him to be certain of the records in the city hall. Q. 16. Did you ever give him to understand that your first bill covered all your services? Ans. I never did." From the foregoing it appears that the appellee had an account for board and pro-

-fessional services as a physician against the estate of his
·deceased sister, and that he filed his claim for the same
properly before the expiration of six months after the first
publication of notice by the administrator.   We have held
. that: "the statute was literally complied with and its pur-
pose accomplished when notice to the representative of the
·deceased debtor was given according to law in a manner that
is held to be equivalent to the service of process upon a
defendant so as to subject the executor or administrator
to the jurisdiction of the court or other tribunal, and give
validity to the judgment or  allowance that may follow.
2 Woerner, Adm. § 397 and cases cited." *Taylor* v. *The
Superior Court*, 30 R. I. 560, 566, and see, also, *Municipal
Court* v. *Bostwick*, 31 R. I. 551, 555.

(2)      "It is a well settled principle of law that a judgment
concludes the rights of the parties with respect to cause
of action stated in the pleading on which it is rendered,
whether such action embraces the whole or only part of the
demand constituting the cause thereof, and from this it
follows that a demand indivisible in its nature cannot be
split so as to authorize several actions for the same claim; and
if a recovery is had of a part of such a demand, it will be
regarded as an election to accept that part for the whole."
23 Cyc. 436 and cases cited.   "The object of the rule is to
prevent repeated litigation between the same parties in
regard to the same subject of controversy; to protect defend-
ant from unnecessary vexation; and to avoid the costs and
expenses incident to numerous suits." *Ibid*, p. 438 and
cases cited.   In the language of Mr. Justice Miller, in
*United States* v. *Throckmorton*, 98 U. S. p. 65:   "There are
no maxims of the law more firmly established, or of more
value in the administration of justice, than the two which are
·designed to prevent repeated litigation between the same
parties in regard to the same subject of controversy; namely,
*interest reipublicae, ut sit finis litium,* and *nemo debet bis
vexari pro una et eadem causa.*"   There is a difference of
·opinion concerning the divisibility of running accounts for

the purpose of bringing more than one suit thereon. "While there are many decisions to the effect that each separate item of a running account furnishes a distinct cause of action. which at the option of the creditor may be separately sued upon, unless there is an express contract to the contrary, the circumstances show that one entire contract was intended, or from usage or the course of dealing an agreement or under-standing to that effect may be inferred, yet, by what appears to be the better doctrine it is held that in the absence of special circumstances an open or continuous running account between the same parties constitutes a single and entire demand which is not susceptible of division, the aggregate of all the items being regarded as the amount due." 23 Cyc. 440 and cases cited. The better doctrine above alluded to has. been recognized by this court in the case of *Corey* v. *Miller*, 12 R. I. 337, wherein it appeared that the action was assump-sit to recover a balance due by book account. A part of the account accrued before, and a part after, July 1, 1870. The action was begun by a writ of arrest in the usual form, dated November 13, 1876, and served the following day by arrest of the defendant. Gen. Stat. R. I. cap. 195, § 8, authorizes the issuing of a writ commanding the arrest of any person not exempt by law from arrest in any action for the recovery of a debt, the cause of which accrued previously to the first day of July, 1870. The defendant moved to dismiss. the suit upon two grounds whereof the second alone is perti-nent to the present inquiry. The opinion was written by Mat-teson, J., and the following is his language relative thereto: "The second ground of the motion is, that the declaration discloses no cause of action which authorized the arrest of the defendant, because the balance of account in favor of the plaintiff constitutes one entire demand, and as the. last items in the account did not accrue till the 12th day of September, 1870, the balance of account sued for is to be considered as a cause of action accruing on that day. An account is so far treated as one entire demand, unless there is something in the course or nature of the dealings of the

parties, or in the mode of keeping it, to indicate a contrary intention, that it cannot be severed for the purpose of bringing different suits on its different parts. If it could be so severed, as many different suits might be brought as it contains distinct items. This multiplication of suits, with its attendant expense and hardship to the debtor, it is the purpose of the rule to prevent. But an account is not so far treated as one entire demand that a creditor is compelled to sue for the whole of it against his wishes. He may sue for a part. If he does so, he cannot afterwards sue for the rest. *Guernsey* v. *Carver*, 8 Wend. 492; *Bendernagle* v. *Cocks*, 19 Wend. 207; *Borngesser* v. *Harrison*, 12 Wis. 544.

"If the plaintiff had omitted from his suit so much of his account as accrued subsequently to July 1, 1870, the defendant's arrest would have been legal; but inasmuch as he has included in it the entire account, for a part of which the law gave no authority to arrest the defendant, the arrest must be considered illegal and void. *Bowen* v. *True*, 53 N. Y. 640; *McGovern* v. *Payn*, 32 Barb. S. C. 83, 91. The motion is therefore granted, and suit is dismissed."

The appellee does not contend that he had more than one account for medical attendance against the said estate, which was a continuous running account for services rendered by him as a physician, to his sister from April 15, 1900 to March 17, 1906, whereof notice had been given to the representative of the deceased debtor according to law, but he testified that in the claim he filed he "forgot to include in it any item or bill for professional services from the time she left my house until the time she died." That is he forgot to put in all of his running account and only put in a part. But before the expiration of a year from the first notice of publication he not only recalled to mind the omitted items for professional services, but also was advised that the claim was valid and enforceable against the said estate.

This is not the case of a claimant who, through accident, misfortune or mistake, has unwittingly severed his entire account by filing a claim for a portion, instead of the whole of

the same, and who has attempted to reunite it for the purpose of establishing a single claim for the whole account against an estate within the period fixed by law for the filing of such claims. In such a case every facility should be afforded for the accomplishment of such a laudable object. The law looks with favor upon the early recognition of mistakes and endeavors made to correct them within the prescribed periods of limitation. But the present case cannot be included within that category. In the case under consideration the claimant, who had inadvertently severed his account by filing a claim for a portion thereof when he intended to file a claim for the whole, but who forgot to include therein certain items, discovered his mistake before the expiration of the statutory period for the filing of claims, but instead of endeavoring to unite the severed portions of his account he ratified the severance by filing a separate and independent claim for the portion of the account omitted from the first claim filed, and now insists upon the validity of both claims. He has never attempted in any manner to effect a union of the severed portions of his account, but claims that he had the right to file the two claims for his account because he filed the first within the six months period under the statute and the second after such period, but within the statutory period of one year. The statute, C. P. A., Sec. 883, hereinbefore quoted, gives a preference to claims filed within six months over claims subsequently filed and bars all claims not filed within one year from the time therein prescribed. No claimant has the right to sever claims otherwise indivisible for the purpose of making one part thereof a claim to be preferred over the other part. The peculiarity of the claimant's position in regard to the severed account may be appreciated by considering his testimony concerning the validity of his claims: "Q. 14. Did you gather from information by counsel that the validity— did you gather that there was any difference as to the validity of your two claims, one being of stronger validity or of weaker validity than the other? Ans. That was the idea

precisely, that the second bill was a valid claim.    The first bill while she was under my roof at the time did not seem to me to be so valid.    She was a member of my household." It thus appears that the second bill which "was a valid claim" for medical services, rendered to his sister in her last sickness and until her death, was the one he forgot to file in the first instance and which he did not file in time to make it a preferred claim, and that the bill for the previous services, which did not seem to him to be so valid, was the one that he did file in time to give it preference under the law.    As the appellee did not have two accounts against the estate he was not entitled to file two claims against it; he had no right to subject the estate to the expense of defending two law suits for one account.    As he was not entitled to file the second as a separate and distinct claim, there was no necessity for the appellant to disallow the second claim so filed.    His failure to disallow the same does not constitute an allowance of the claim, and the administrator is not guilty of unfaithful administration of the estate for not paying the same.

The appellant's exceptions are therefore sustained and the case is remitted to the Superior Court, with directions to reverse the decree of the Municipal Court of the city of Providence, whereby Dexter B. Potter, as administrator upon the estate of Abbie M. Harvey, deceased, was adjudged guilty of unfaithful administration upon said estate, entered on the fifth day of February, 1909, and for further proceedings.

*Edward D. Bassett, Edward A. Stockwell,* for appellant.
*Arthur P. Sumner,* for appellee.